UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| DOUGLAS M. HODGE, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 15-CV-105-GFVT |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| B. J. BURKHART, *et al.*, | ) **&** |
| | ) **ORDER** |
| Defendants. | ) |
| | ) |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Douglas M. Hodge is an inmate confined by the Kentucky Department of Corrections in the Kentucky State Reformatory, located in La Grange, Kentucky. Hodge has filed a *pro se* 42 U.S.C. § 1983 civil rights complaint, in which he challenges the conditions of his prior confinement at the Harlan County Detention Center ("HCDC") in Harlan, Kentucky, and asserts federal constitutional and common law claims against four HCDC officials.[1] On October 8, 2015, Hodge was granted *in forma pauperis* status in this proceeding. [R. 9.]

The Court must conduct a preliminary review of Hodge's § 1983 complaint because he has been granted *in forma pauperis* status and because he asserts claims against government officials. *See* 28 U.S.C. §§ 1915(b), 1915A. A district court must dismiss any action which: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *Id*. Because Hodge is proceeding *pro se*, the Court liberally construes his claims and accepts his factual allegations as

---

[1] When Hodge filed this action on June 17, 2015, he was confined in the HCDC. [R. 1 at 1.] On February 1, 2016, Hodge notified the Court of his transfer to the Kentucky State Reformatory. [R. 11.]

true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). For the reasons stated below, the Court dismisses some, but not all, of Hodge's claims.

**I**

Hodge names four Harlan County Detention Center employees as Defendants to his § 1983 action: (1) B.J. Burkhart, HCDC Jailer; (2) Ken Casteel, HCDC Deputy Jailer; (3) Dan Howard, HCDC Captain; and (4) Derek Moore, HCDC Chief Deputy Jailer. [*See* R. 1 at 1-2.] Five claims are set forth in Hodge's complaint as follows. [*See id.* at 2-3.]

First, Hodge maintains he was denied access to legal material between April 9, 2015, and June 1, 2015. [*Id.* at 2.] He does not explain which of the four Defendants denied him access to the desired legal material, but he states that he did file a grievance regarding the problem which went unanswered. [*Id.* at 6.] Second, Hodge alleges he was refused "the right to a fair due process." [*Id.* at 2.] Hodge does not identify which of the four Defendants violated his right to due process or how this alleged due process violation occurred. [*Id.*]

Hodge's three remaining claims are more specific. Hodges alleges that on or about May 22, 2015, Deputy Jailer Ken Casteel assaulted him and put a knife to his throat. [*Id.* at 2-3.] He claims Casteel "observed another inmate sodomize me with an unknown object and laughed about it" and that Casteel failed to report the matter. [*Id.* at 2.] He also claims that Casteel made harassing comments to him of an overt sexual nature. [*See id.* at 3-4.] Hodge states that these events happened at the Harlan County Detention Center and at a cemetery in Harlan County. [*Id.* at 4.]

While Hodge claims he filed a grievance regarding his lack of access to legal material, he states he did not file a grievance related to any of his allegations against Casteel because he was

2

too afraid to do so. [*Id.* at 6.] Hodge states that Jailer B.J. Burkhart is Ken Casteel's nephew and that at least three of Casteel's relatives were employed at the HCDC. [*Id.*] In a handwritten supplement to his pre-printed complaint form, Hodge reiterates that he was afraid to report the offenses at the HCDC because Casteel was Jailer Burkhart's uncle. [*Id.* at 9.] Hodge further alleges that he wrote three letters to the Kentucky Department of Corrections to notify them of his situation at the HCDC. [*Id.*] He does not indicate whether he received a response from the Kentucky Department of Corrections or not. [*Id.*] Hodge further alleges that on June 1, 2015, he was transported to the Boone County Jail for a court appearance and that he reported Casteel's actions to the Boone County Jail Authorities. [*Id.*] Hodge claims he has "reached out to" the Kentucky State Police, his attorney, an unidentified Commonwealth Attorney, the Kentucky Department of Corrections, and the Boone County Jail's "PREA investigators,"[2] all to no avail. Hodge also expressed fear for his life upon being returned to the HCDC on or around June 19, 2015. [*Id.*]

In his complaint, Hodge asserts various violations of his constitutional rights. Hodge broadly alleges a claim for the denial of due process, which the Court considers pursuant to the Fourteenth Amendment to the United States Constitution. He contends Defendant Casteel's actions constitute common law assault; sexual harassment; a violation of the Prison Rape Elimination Act, 42 U.S.C. § 15601, *et seq,* and failure to report a crime. To the extent that Hodge alleges Casteel physically assaulted him and failed to intervene while he was being sexually assaulted by another unidentified inmate, the Court broadly construes the allegations as claims alleging cruel and unusual punishment in violation of the Eighth Amendment of the

---

[2] Here, Boone refers to the Prison Rape Elimination Act, 42 U.S.C. § 15601, *et seq.*, which the Court will discuss in greater detail, *infra*.

United States Constitution. Finally, Hodge's claim alleging the denial of access to legal materials falls under the First Amendment, which guarantees the access of the courts.

Ultimately, Hodge seeks financial damages in an unspecified amount; a "restraining order" against Defendant Casteel; an order directing Casteel to resign; an order directing the Jailer (presumably, HCDC Jailer B.J. Burkhart) to allow him access to inmate legal materials; and an order directing his transfer to another facility. [*Id.* at 8.] He also demands trial by jury on all issues. [*See* R. 10 (granting motion which clarified Hodge's request for a jury trial).]

## II

### A

It is unclear whether Hodge wishes to assert his First, Eighth, and Fourteenth Amendment claims against Defendants Burkhart, Howard, Casteel, and Moore in their official or individual capacities, or in both capacities. The Court, therefore, first considers Hodge's potential official capacity claims. To the extent Hodge desired to assert his claims against any or all of the Defendants in their official capacities, those claims are construed as claims against the municipal entity itself, i.e., Harlan County, Kentucky. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Individuals sued in their official capacities stand in the shoes of the entity they represent.").

Hodge fails to state a claim for relief under § 1983 against Harlan County, because municipalities and counties are not vicariously liable for the actions of their employees under § 1983. "It is firmly established that a municipality, or . . . a county, cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). To state a claim for relief against Harlan County in this case, Hodge must

4

allege facts showing that the misconduct giving rise to his injuries was the result of a policy, statement, regulation, decision, or custom promulgated by Harlan County. *See Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014) (explaining a plaintiff must adequately plead a violation of a federal right, that the defendant acted under color of state law, and that a municipality's policy or custom caused the violation to happen); *Monell*, 436 U.S. at 694. Hodge has not made any such allegations against Harlan County, the Harlan County Fiscal Court, or any other such municipal entity. Instead, he alleges various actions on the part of Defendant Ken Casteel. [*See* R. 1.] If Hodge intended to assert any § 1983 claims against the Defendants in their official capacities, those claims must be dismissed with prejudice for failure to state a claim upon which relief may be granted. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993); *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013).

**B**

**1**

The Court next considers Hodge's claims against the Defendants in their individual capacities, beginning with the claims against Jailer B.J. Burkhart, Captain Dan Howard, and Chief Deputy Jailer Derek Moore. On the whole, Hodge alleges no facts whatsoever connecting any of the alleged constitutional or common law violations to these three Defendants, and therefore the claims against the three Defendants in their individual capacities should be dismissed.

Personal involvement is necessary to establish liability under § 1983. *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (explaining liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others"); *see also Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011).

5

Here, Hodge's complaint contains no facts which concern or implicate Defendants Burkhart, Howard, and Moore as to the alleged assault, denial of due process, or denied access to legal material. Hodge may, ostensibly, have listed the three Defendants because of their administrative and/or supervisory positions at the HCDC. However, § 1983 liability may not be premised solely on a theory of *respondeat superior* or the right to control employees. *See Monell*, 436 U.S. at 691-92; *Shehee v. Luttrell*, 199 F.3d 295, 500 (6th Cir. 1999). Supervisory officials are only liability in their individual capacities if they "either encouraged the specific incident or misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982).

Hodge's complaint speaks only to the allegedly unlawful actions of Defendant Casteel and mentions no facts which suggest the other three Defendants were personally involved in, implicitly authorized, approved, or otherwise acquiesced to Casteel's conduct. [*See* R. 1.] In fact, Hodge repeatedly states he did not report Casteel's conduct to Jailer Burkhart because of the familial relationship, thus potentially depriving Burkhart of the opportunity to approve or disapprove of Casteel's behavior. [*Id.*]

To the extent Hodge seeks relief against the three Defendants because of his fear of accessing the grievance process or because of his one failed attempt at obtaining relief, the three Defendants are still not liable in their individual capacities. A plaintiff cannot maintain a § 1983 claim against a prison official based solely on the denial of a prisoner's grievance. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."). A

plaintiff's claim remains against the subject of his grievances, not the individuals who decide whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). Further, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). Likewise, there is "no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hoffmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Thus, if Hodge is dissatisfied with the structure of the administrative remedy process itself or the outcome of that process, he may not maintain a claim under § 1983 against HCDC Jailer Burkhart or any other employees based on that dissatisfaction.

Overall, Hodge's First, Eighth, and Fourteenth Amendment claims asserted against Defendants Burkhart, Howard, and Moore individually via section 1983 must be dismissed. Similarly, Hodge's common law claims for sexual harassment, assault, failure to intervene, and failure to report a crime must be dismissed for failure to state a claim upon which relief may be granted. With the exception of one additional reference to Jailer Burkhart in the context of Hodge's administrative grievance process explanation, Hodge mentions the three men only in his list of Defendants. He states no facts about them or their relationship to his alleged injuries, and, thus, the claims fail to survive the Court's initial screening process.

## 2

The claims against Defendant Ken Casteel require a more detailed analysis. While Hodge failed to allege specific facts regarding the other three Defendants, the bulk of Hodge's complaint concerns Casteel. After reviewing the complaint and the relevant case law, the Court determines that some of the claims against Casteel are properly dismissed but that other claims require an answer on the part of the Defendant.

First, Hodge's complaint that Casteel verbally harassed him on May 22, 2015, by making a sexually inappropriate comment must be dismissed, even if the Court accepts Hodge's allegation as true. Offensive verbal comments and jaunts qualify as verbal abuse, but in the context of prison and jail life, verbal abuse and harassment do not support an Eighth Amendment claim. *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."). *See also Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse]"); *Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). The alleged verbal abuse, while unprofessional and reprehensible, does not support a constitutional claim.

Next, Hodge's broad allegation that his right to due process was denied must be dismissed at this stage of the litigation. Hodge fails to identify both the "process" of which he was denied and the Defendants who allegedly denied the due process. If Hodge wished to assert this claim against Casteel in his individual capacity, he set forth no facts to allege Casteel was involved in, condoned of, or denied his due process. Where a specific constitutional amendment provides an explicit source of protection against a particular type of governmental conduct, "that Amendment, not the mere generalized notion of 'substantive due process' must be the guide" for analyzing a plaintiff's claims. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Here, Hodge's specific claims against Casteel fall under the Eighth Amendment's prohibition against cruel and unusual punishment, so it is unnecessary to further analyze Hodge's claims under the more

8

generalized Fourteenth Amendment due process concept. The due process claim against Casteel in his individual capacity is properly dismissed.

Hodge's claim alleging the denial of access to legal materials must also be dismissed as it relates to Defendant Casteel in his individual capacity. Hodge does not claim that Casteel was the individual depriving him access to the legal materials. [*See* R. 1 at 2-3.] He alleges only an open-ended First Amendment claim that he was forbidden access in general. Hodge fails to state a claim upon which relief can be granted under the First Amendment, and that claim will be dismissed with prejudice as to Defendant Casteel.

By contrast, Hodge's allegations of excessive force and that Casteel observed but failed to intervene and stop another inmate from sexually and physically assaulting Hodge do survive the Court's initial screening. These two claims set forth sufficient facts to require a response from Defendant Casteel. As explained below, the London Clerk's Office will be directed to issue a summons for Defendant Casteel, and because Hodge has been granted pauper status, the United States Marshals Service will serve the summons and complaint on his behalf. *See* Fed. R. Civ. P. 4(c)(3): 28 U.S.C. § 1915(d).

## C

A few matters remain for the Court to address. Hodge mentions the Prison Rape Elimination Act ("PREA") and perhaps seeks damages under that statutory scheme. [*See* R. 1 at 4.] However, the PREA does not provide a private right of action or means of recovery for Hodge:

> The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. 42 U.S.C. § 15601 *et seq*. The statute does not grant prisoners any specific rights. In the absence of "an 'unambiguous' intent to confer individual rights," such as a right to sue, courts will not imply such a right in a federal funding provision.

9

*Chinnici v. Edwards*, No. 1:07-CV-229, 2008 WL 3851294, at *3 (D. Vt. Aug.12, 2008) (quoting *Gonzaga University v. Doe*, 536 U.S. 273, 280 (2002)); *see also Jones v. Schofield*, No. 1:08-CV-7 (WLS), 2009 WL 902154, at *2 (M.D. Ga. Mar. 30, 2009).

Where neither the text nor the structure of a statute indicate that Congress intended to create a new individual right, "there is no basis for a private suit, whether under § 1983 or under an implied right of action." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002). While the Sixth Circuit has not yet addressed the issue, most district courts have found that the PREA does not create a private cause of action. *See*, *e.g.*, *Simmons v. Solozano*, No, 3:14CV-P354-H, 2014 WL 4627278, at *4 (W.D. Ky. Sept. 16, 2014) (dismissing prisoner's § 1983 claim alleging violations of the PREA, finding that the statute creates no private right of action); *Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) ("There is no basis in law for a private cause of action to enforce a PREA violation."); *Holloway v. Dep't of Corr.*, No. 3:11-CV-1290(VLB), 2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013) ("There is nothing in the PREA that suggests that Congress intended it to create a private right of action for inmates to sue prison officials for non-compliance to the Act."). Given this considerable authority, Hodge's claims alleging violations of the PREA and any demand for damages stemming from that alleged violation must be dismissed.

Hodge also requests to be housed at a facility besides the HCDC. As noted at the beginning of this Order, Hodge is no longer confined in the HCDC but has been at the Kentucky State Reformatory in LaGrange, Kentucky, for three months. Thus, his request for transfer, as well as any other request for a form of injunctive relief, has become moot. *See, e.g., Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (inmate's request for injunctive relief mooted upon transfer from relevant prison).

**IV**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1.  Plaintiff Douglas Hodge's 42 U.S.C. § 1983 claims against Defendants B.J. Burkhart, Ken Casteel, Dan Howard, and Derek Moore in their official capacities are **DISMISSED WITH PREJUDICE**;

2.  Plaintiff Hodge's 42 U.S.C. § 1983 claims against Defendants B.J. Burkhart, Dan Howard, and Derek Moore in their individual capacities, as well as his pendant state and/or common law claims, are **DISMISSED WITH PREJUDICE;**

3.  Defendants B.J. Burkhart, Dan Howard, and Derek Moore are **TERMINATED** as Defendants from this proceeding;

4.  Plaintiff Hodge's Eighth Amendment claims alleging verbal sexual harassment; First Amendment claims alleging denial of access to legal materials; and Fourteenth Amendment claims alleging the denial of due process, all brought against Defendant Ken Casteel in his individual capacity, are **DISMISSED WITH PREJUDICE**;

5.  Plaintiff Hodge's Eighth Amendment claims alleging the use of excessive force and the failure to stop the use of force by another inmate, as well as Hodge's pendant state/common law claims alleging assault, failure to intervene in a crime, and failure to report a crime, against Defendant Ken Casteel in his individual capacity **SHALL PROCEED**, and Defendant Casteel must respond to those claims;

6.  Hodge's claims alleging violations of the Prison Rape Elimination Act, 42 U.S.C. § 15601, *et seq*., are **DISMISSED WITH PREJUDICE**;

7. Hodge's request for various forms of injunctive relief are **DENIED AS MOOT** due to Hodge's current confinement at the Kentucky State Reformatory;

8. The London Clerks' Office is **DIRECTED** to prepare a "Service Packet" for Defendant Ken Casteel, Deputy Jailer of the Harlan County Detention Center, 6000 Highway 38, Evarts, Kentucky, 40828. The Service Packet shall include:

    a. a completed summons form;

    b. the complaint [R. 1];

    c. a copy of this Memorandum Opinion and Order; and

    d. a completed USM Form 285;

9. The London Clerks' Office is **DIRECTED** to send the Service Packet to the Unitd States Marshals Service in Lexington, Kentucky;

10. The United States Marshals Services shall be responsible for ensuring that Defendant Ken Casteel is successfully served with process;

11. Within forty (40) days of the date of entry of this Order, the United States Marshals Service Office shall send a Service Report to the London Clerks' Office stating whether service was accomplished, which the Clerk shall **FILE** in the record.

    a. If Casteel is served by certified mail, the Service Report shall include (1) a copy of the green card showing proof of service, or (2) a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

    b. If Casteel is personally served, the Service Report shall indicate (1) whether Casteel was successfully served personally, or (2) a statement explaining

12

why Casteel could not be served and what efforts are being taken to locate the Defendant and accomplish personal service;

12. Plaintiff Hodge must keep the Clerk of the Court informed of his current mailing address. **Failure to notify the Clerk of any change of address may result in dismissal of his case**; and

13. With every notice or motion filed with the Court, Hodge must (a) mail a copy to Defendant Casteel or his attorney; and (b) at the end of the notice or motion, certify that he has mailed a copy to Defendant Casteel or his attorney and the date on which this was done. **The Court will disregard any notice or motion which does not include this certification.**

This the 20th day of May, 2016.

Gregory F. Van Tatenhove
United States District Judge